## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **L.I.G. PET GOODS** | : |
| **TRADING, LLC d/b/a** | : |
| **UNITED K9S AND UNITED K9S.COM;** | : |
| | : |
| **SNIFF 'N FETCH LLC d/b/a** | : |
| **SNIFF 'N FETCH AND** | : |
| **SNIFF 'N FETCH.COM;** | : |
| | :        **CIVIL ACTION** |
| **SONIC & LUCY** | : |
| **ASSOCIATES LLC d/b/a** | : |
| **DOGGIE STYLE;** | : |
| | : |
| **DS MARKET STREET LLC d/b/a** | : |
| **DOGGIE STYLE;** | :        **NO.  08-CV-5345** |
| | : |
| **DOGGIE STYLE 2 HOLDING** | : |
| **COMPANY LLC d/b/a** | : |
| **DOGGIE STYLE;** | : |
| | : |
| **LUCY & SONIC LLC d/b/a** | : |
| **DOGGIE STYLE;** | : |
| | : |
| **IRA GOLDFARB;** | : |
|         **Plaintiffs** | : |
|     **vs.** | : |
| | : |
| **LEEHE F. GOLDFARB;** | : |
| | : |
| **CORY FRISCO;** | : |
| | : |
| **EMPIRE DATA** | : |
| **TECHNOLOGIES, INC.** | : |
|         **Defendants.** | : |

_____ :

### ORDER & MEMORANDUM

### O R D E R

**AND NOW**, this 15th day of January, 2009, upon consideration of Leehe Goldfarb's

Supplemental Motion for Appointment of Receiver (Document No. 18, filed December 12,

2008); and Plaintiffs' Brief in Opposition to Defendant Leehe F. Goldfarb's Supplemental

Motion for Appointment of a Receiver (Document No. 24, filed December 24, 2008), for the

reasons set forth in the attached Memorandum, **IT IS ORDERED** that Leehe Goldfarb's

Supplemental Motion for Appointment of Receiver is **DENIED**.

<u>M E M O R A N D U M</u>

I.    **Introduction**

Plaintiffs, Ira Goldfarb and various companies allegedly owned or controlled by him ("pet

supply companies"), initiated this action on November 12, 2008 against Leehe F. Goldfarb, Mr.

Goldfarb's estranged spouse, Cory Frisco ("Frisco"), an employee of the pet supply companies,

and Empire Data Technologies, Inc., an eCommerce website host. (Pls.' Mot. TRO Prelim. Inj.

3.) On October 18, 2008, defendant Mrs. Goldfarb responded to plaintiffs' motion and cross-

moved for injunctive relief and indemnification. (<u>See</u> Br. Opp. Pls.' Mot., Cross-mot. Inj. Relief,

Cross-mot. Indemnification.)

This case arises out of what is in essence a domestic relations dispute between an

estranged couple in the midst of bitter and protracted divorce proceedings. The key assets at the

core of this dispute are several companies selling high-end products for pets. Both Mr. and Mrs.

Goldfarb claim an ownership interest in these entities.

Presently before the Court is defendant Mrs. Goldfarb's Supplemental Motion for

Appointment of a Receiver ("Receivership Motion"). For the reasons set forth below, the Court

denies the Receivership Motion.

II.   **Background**

Mrs. Goldfarb asserts that during their marriage, Mr. and Mrs. Goldfarb opened and

operated several businesses as joint owners. (Br. Opp. Pls.' Mot., Cross-mot. Inj. Relief, Cross-mot. Indemnification 4.) According to Mrs. Goldfarb, plaintiff pet supply companies are subsidiaries of L.I.G. Retail Holdings, L.L.C., a holding company in which Mrs. Goldfarb has a fifty percent ownership interest. (<u>Id.</u>) Indeed, Mrs. Goldfarb claims that "L.I.G." in the title of the holding company stands for "Leehe and Ira Goldfarb." (<u>Id.</u>)

Mrs. Goldfarb alleges that beginning in September 2007, Mr. Goldfarb altered various corporate records to divest Mrs. Goldfarb of her ownership interest. (<u>Id.</u> at 6.) Mrs. Goldfarb further alleges that Mr. Goldfarb engaged in such actions because he was having extramarital relations with Claudia Gutierrez ("Gutierrez"), a part-time financial consultant to the businesses. (<u>Id.</u> at 6, 8.) On September 18, 2008, Mrs. Goldfarb filed for a divorce. (<u>Id.</u> at 9, Ex. F.)

Mrs. Goldfarb accuses Mr. Goldfarb of extensive wrongdoing, resulting in the waste of corporate assets, mismanagement, and fraud. Specifically, Mrs. Goldfarb contends that Mr. Goldfarb used funds from their jointly owned businesses to pay for Gutierrez's children's private school tuition, to pay for Gutierrez's rent, and to provide Gutierrez with $10,000 per month. (<u>Id.</u> at 8–9.) She alleges that Mr. Goldfarb refused to pay the credit card bills for their businesses and removed Mrs. Goldfarb's name from business and personal bank accounts to preclude her from accessing company funds. (Def.'s Supplemental Mot. Appt. Receiver 5.) According to Mrs. Goldfarb, these actions disrupted business operations, such as the purchase of inventory. (<u>Id.</u>) Mrs. Goldfarb also contends that in 2006 and 2007, Mr. Goldfarb failed to pay taxes for the companies. (<u>Id.</u> at 9.) Based on an "Affidavit by Email" written and signed electronically by Andy Burr ("Burr"), an employee of the pet supply companies, Mrs. Goldfarb claims that Mr. Goldfarb falsified one of Gutierrez's employment contracts and moved or destroyed company

3

records. (Id. at 6, Ex. B.) Since then, Mrs. Goldfarb asserts that Mr. Goldfarb has threatened

employees with retaliation. (Id. at 7.)

       In response to Mrs. Goldfarb's allegations, Mr. Goldfarb argues that Mrs. Goldfarb has

failed to produce any evidence that she has a fifty percent ownership interest in any of the entities

involved in this case. (Pls.' Br. Opp. Def.'s Supplemental Mot. Appt. Receiver 4.) In support of

his position, Mr. Goldfarb attaches the operating agreements for all of the pet supply companies

named as plaintiffs in this case, seeking to demonstrate that he "is the sole owner of each" of

them. (Id. at 6, Exs. A–G.) Mr. Goldfarb claims that L.I.G. Retail Holdings, L.L.C. (the holding

company in which Mrs. Goldfarb claims a fifty percent ownership interest) does not own or

control any of the plaintiff pet supply companies, thus precluding Mrs. Goldfarb from

demonstrating that she was "forced out or frozen out" of the pet supply companies. (Id. at 6–7.)

Mr. Goldfarb also attacks Mrs. Goldfarb's reliance on Burr's "Affidavit by Email" by providing

a "Clarification of Sworn Statements" in which Burr retracts the allegations he made in the

original "Affidavit by Email." (Id. at 7–8, Ex. H.)

## III.    Procedural History

       On September 18, 2008, Mrs. Goldfarb initiated divorce proceedings against Mr.

Goldfarb by filing a Complaint in Divorce with the Court of Common Pleas in Philadelphia

County. (Br. Opp. Pls.' Mot., Cross-mot. Inj. Relief, Cross-mot. Indemnification 9, Ex. F.) Mrs.

Goldfarb also filed an Emergency Petition for Special Relief, requesting "an injunction to prevent

dissipation of all assets or alienation of all assets that were in [Mr. Goldfarb's] possession" and

"an injunction to maintain the status quo of the business . . . ." (Id.) The Court of Common Pleas

subsequently issued two injunctive orders. First, on September 19, 2008, that court enjoined Mr.

Goldfarb from alienating any and all assets and ordered Mr. Goldfarb "not to make any unilateral decisions regarding the businesses without the written consent of [Mrs. Goldfarb], including but not limited to purchasing goods and hiring and firing of employees." (Id. at Ex. G.) On October 2, 2008, following a hearing, (Id. at Ex. I.), the Court of Common Pleas issued an order enjoining both Mr. and Mrs. Goldfarb from alienating any assets and ordering them to attend mediation. (Id. at Ex. J.) As of November 6, 2008, the parties tentatively reached a settlement in principle, the terms of which were outlined in a settlement agreement. (Id. at Ex. K.) However, before the settlement agreement was signed, incidents occurred which resulted in the breakdown of the settlement and precipitated the filing of the instant action in federal court.

Plaintiffs filed the Complaint in this case on November 12, 2008. In Counts I, II, and III of the Complaint, plaintiffs assert various claims under the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 against defendants Mrs. Goldfarb and Frisco. Specifically, in Counts I and II, plaintiffs assert that Mrs. Goldfarb and Frisco intentionally and without authorization accessed plaintiffs' protected computers and obtained or transmitted information from these computers to third parties, causing damage to plaintiffs. (Compl. ¶¶ 55–66.) In Count III, plaintiffs allege that Mrs. Goldfarb and Frisco engaged in a conspiracy to violate the CFAA. (Id. ¶¶ 68–73.) In Count IV, plaintiffs assert that Mrs. Goldfarb and Frisco misappropriated trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Stat. Ann. § 5302. (Id. at ¶¶ 75–82.) Plaintiffs also allege conversion against Mrs. Goldfarb and Frisco in Count V. (Id. at ¶¶ 84–91.) Finally, in Count VI, plaintiffs seek a permanent injunction against all defendants to enjoin them from interfering with plaintiffs' computer systems and using any information so accessed. (Id. at ¶¶ 93–98.)

5

Also on November 12, 2008, plaintiffs filed a Motion for Temporary Restraining Order and Motion for a Preliminary Injunction. On November 15, 2008, after an emergency hearing on this motion, the Court entered a Temporary Restraining Order against defendant Frisco. Mrs. Goldfarb filed her response to plaintiffs' Motion for Temporary Restraining Order on November 18, 2008 and cross-moved for injunctive relief and indemnification. Following a hearing on November 19, 2008, which only Mr. and Mrs. Goldfarb attended, the Court entered a Standstill Agreement drafted and agreed upon by Mr. and Mrs. Goldfarb.

On December 12, 2008, Mrs. Goldfarb filed the instant Receivership Motion.

**IV.    Standard of Review**

"[A]ppointment of a receiver is considered an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (2d ed. 1997); Mintzer v. Arthur L. Wright, Co., 263 F.2d 823, 824 (3d Cir. 1959) (stating that appointment of a receiver is "an equitable remedy of rather drastic nature"); Miller v. Frisco, Inc., 376 F. Supp. 468, 471, 472 (E.D. Pa. 1974) (characterizing the appointment of a receiver as a "Draconian" measure requiring "extreme circumstances" to justify its use). Whether to appoint a receiver "is a matter within the sound discretion of the court . . . and ought never be made except in cases of necessity, and upon a clear and satisfactory showing that the emergency exists . . . ." Miller, 376 F. Supp. at 470.

This "extraordinary remedy" may be warranted to "avert further loss of assets through waste and mismanagement," Tanzer v. Huffines, 408 F.2d 42, 43 (3d Cir. 1969), to protect a corporation when its property is in "'grave and imminent danger of dissipation,'" Miller, 376 F.

Supp. at 471 (quoting <u>Zinke-Smith, Inc. v. Marlow</u>, 323 F. Supp. 1151, 1151 (V.I. 1971)), or "to prevent threatened diversion or loss of assets through gross fraud and mismanagement of its officers." <u>Burnrite Coal Briquette Co. v. Riggs</u>, 274 U.S. 208, 212 (1927). However, "[e]ven the threat of insolvency, which may be a very real threat . . . is inadequate to permit the appointment of a receiver . . . ." <u>Miller</u>, 376 F. Supp. at 472 (citing <u>Mintzer v. Arthur L. Wright Co.</u>, 263 F.2d at 826). Because receiverships interfere with property rights, the appointment of a receiver "require[s] the existence of some legally recognized right held by the creditor in the debtor's property amounting to more than a mere claim against the debtor." <u>Mintzer</u>, 263 F.2d at 825.

## V.   Discussion

### A.   Receivership Motion - <u>Princess Lida</u> doctrine

In the instant Receivership Motion, Mrs. Goldfarb argues that the appointment of a receiver is necessary because Mr. Goldfarb has engaged in wrongdoing that threatens to dissipate the assets of companies in which Mrs. Goldfarb has an ownership interest. (Def.'s Supplemental Mot. Appt. Receiver 2.) She further alleges that Mr. Goldfarb has perpetrated "massive fraud" and "is running the companies in a corrupt, fraudulent and self-serving manner . . . ." (<u>Id.</u> at 10.) According to Mrs. Goldfarb, the appointment of a receiver is essential "to preserve, protect and ensure competent management, maintenance, and operation of the businesses." (<u>Id.</u>)

For the reasons discussed below, the Court will not reach the merits of the Receivership Motion. Rather, the Court will deny the Receivership Motion based on the <u>Princess Lida</u> doctrine.

In <u>Princess Lida of Thurn & Taxis v. Thompson</u>, the Supreme Court elaborated a doctrine applicable in cases where there are two *in rem* or *quasi in rem* suits concerning the same

property, one in state court and the other in federal court. 305 U.S. 456 (1939). In <u>Princess Lida</u>, three trustees of a fund established pursuant to a divorce agreement filed an accounting action in the Court of Common Pleas of Fayette County, Pennsylvania. <u>Id.</u> at 459. The following day, the trust beneficiaries brought suit in equity in district court alleging mismanagement of trust funds and seeking removal of the trustees and restoration of the corpus. <u>Id.</u> The Supreme Court noted that "if both courts were to proceed they would be required to cover the same ground." <u>Id.</u> at 465. While such overlap would not pose a problem for *in personam* actions, the Supreme Court stated:

> [I]f the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.

<u>Id.</u> at 466 (citing <u>Penn General Casualty Co. v. Pennsylvania</u>, 294 U.S. 189 (1935)). The <u>Princess Lida</u> court continued:

> We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.

<u>Id.</u>

In <u>Dailey v. The National Hockey League,</u> the Third Circuit embraced the "continuing validity" of the <u>Princess Lida</u> doctrine. 987 F.2d 172, 175 (3d Cir. 1993). The <u>Dailey</u> court noted that the <u>Princess Lida</u> doctrine "prevents a court in which an action is filed from exercising jurisdiction when a court in a previously filed action is exercising control over the property at

issue and the second court must exercise control over the same property in order to grant the relief sought." Id. In addition, the Third Circuit stated that it is a "'mechanical rule' which requires that the court in which the second suit is brought yield its jurisdiction if the requisite 'property' showing is made." Id. at 176.

In this case, suits are pending in both state and federal court. On September 18, 2008, Mrs. Goldfarb filed for divorce in the Court of Common Pleas. (Br. Opp. Pls.' Mot., Cross-mot. Inj. Relief, Cross-mot. Indemnification 4, Ex. F.) On the same day, Mrs. Goldfarb also filed in the Court of Common Pleas an Emergency Petition for Special Relief requesting equitable relief, including "an injunction to maintain the status quo of the business . . . ." (Id.) The following day, the Court of Common Pleas issued an order enjoining Mr. Goldfarb from alienating any assets and from "mak[ing] any unilateral decisions regarding the businesses without the written consent of [Mrs. Goldfarb] . . . ." (Id. at Ex. G.) Following a hearing on October 2, 2008, the Court of Common Pleas issued a second order enjoining both parties from alienating assets and mandating that the parties attend mediation to decide, *inter alia*, "equitable distribution" of the marital assets. (Id. at Ex. J.) On November 12, 2008, Mr. Goldfarb commenced the instant action seeking equitable relief as to the pet supply companies. Mrs. Goldfarb's subsequent Receivership Motion also seeks equitable relief as to these businesses.

The Court finds that the federal and state court suits in this case are *in rem* actions such that both courts "must have control of the property which is the subject of the litigation" as envisioned by the Princess Lida court. See Shaw v. First Interstate Bank of Wisconsin, 695 F. Supp. 995, 999 (W.D. Wis. 1988) (stating that the terms *in rem*, *quasi in rem*, and *in personam* are "of little use by themselves" and that the action must "fall[] within the term[s] as . . . used by

the U.S. Supreme Court in *Princess Lida*."). The federal action is *in rem* because the requested appointment of a receiver would require this Court to exercise control over property disputed by Mr. and Mrs. Goldfarb—namely, the businesses, the funds required to operate the businesses, and other assets incident to their functioning. Indeed, the Supreme Court has recognized that receivership motions are subject to the rule underlying the Princess Lida doctrine. See Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 195 (1935) (applying the rule "to suits in equity for the control by receivership of the assets of an insolvent corporation"). The divorce proceeding in state court is also an *in rem* action in that the state court was asked to make binding dispositions of the marital assets—including the businesses—that will involve determining ownership and distributing to each spouse his or her equitable share. Moreover, the Princess Lida court noted the doctrine's applicability to suits "brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939). At the very least, the divorce proceeding is a "suit[] of a similar nature" because it will involve exercising control over and making binding determinations as to the property at issue.

Thus, the Court determines that the Princess Lida doctrine applies to this case. Because the divorce action was filed first, rendering the Court of Common Pleas "the court first assuming jurisdiction over [the] property," this Court will not address the Receivership Motion on the merits. In so deciding, the Court notes that the Princess Lida doctrine is a "'mechanical rule,'" Dailey v. The National Hockey League, 987 F.2d 172, 176 (3d Cir. 1993), which serves the interest of "the harmonious cooperation of federal and state tribunals," Princess Lida, 305 U.S. at

466, and "avoid[s] the unseemly and disastrous conflicts in the administration of our dual judicial system." Penn General, 294 U.S. at 195.

**B.     Pending Motions**

On January 15, 2009, Mr. and Mrs. Goldfarb are scheduled to appear before Judge Nina Wright-Padilla in the Court of Common Pleas for a hearing on the divorce petition. In addition, Mr. and Mrs. Goldfarb have reported that they have exchanged settlement proposals. This Court has scheduled a status conference on January 20, 2009.

Pending before this Court are: (1) plaintiffs' Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction, and (2) Mrs. Goldfarb's Cross-Motion for Injunctive Relief and Cross-Motion for Indemnification. The Court defers ruling on these two motions until after the status conference.

**VI.     Conclusion**

For the foregoing reasons, the Court denies Mrs. Goldfarb's Supplemental Motion for Appointment of a Receiver.

**BY THE COURT:**

**      /s/ Honorable Jan E. DuBois  **

**JAN E. DUBOIS, J.**

11